' ON Rehearing.
Nicholls, C. J.
It is contended on rehearing first that the court erred in not sustaining the motion to dismiss the appeal, and second (assuming the case to be before it properly on the merits) that the judgment below should have been affirmed, not reversed.
On the first point is said “ it is conceded that the record does not contain all the evidence adduced on the trial,” and in view of that fact the appeal should fall, but independently of this “ the matter in dispute is too small in amount to bring the case within the appellate jurisdiction of the Supreme Oourt.” It does not follow as a necessary consequence of the fact that some of the evidence’adduced on a trial below was not preserved and transcribed in the record filed-on appeal, or brought up through bills of exception, that the appeal should be dismissed.
*1786 It is true that the Supreme Oourt can only exercise its jurisdiction in so far as it shall have knowledge of the matters contested below (Art. 896, O. P.), but it frequently happens that issues are presented for decision on appeal in order to come to a knowledge of which the testimony taken in the case is not needed. State vs. Bank of Louisiana, 5 N. S. 341. Whether a particular record presents sufficient data upon which we would be justified in avoiding or amending a judgment below we can only know after we shall have heard the contention of the respective parties and made an examination, of the transcript filed.
After an appeal has been regularly taken the appellee is entitled to have a judgment rendered upon the issues raised. It is the duty of an appellant to place matters before an appellate court in manner such as to permit of such a judgment being rendered, and if he does not do so the logical sequence of the situation is that the judgment should be affirmed, not that the appeal should be dismissed in limine. We are aware that courts frequently, after having ascertained that the situation was not such as to enable it under any view of the case to render a judgment altering or modifying that appealed from, to declare the “ appeal dismissed,” but this is because it is assumed that such a decree is substantially one of affirmance.
There is no ground for dismissing this appeal in limine, even i f the statement of facts made out by the judge, which we find appended to the transcript, was made out improperly or illegally, and should be ultimately disregarded.
The demand for-a dismissal of the appeal on the ground that the matter in dispute is insufficient to enable the Supreme Oourt to entertain jurisdiction is based upon the position that the original judgment in this case as between the defendant and the State Tax Collector did not come before this court at all, and has never been anything else than a judgment of the District Oourt, when the Pontchartrain Land Company appealed the main case. That this court was not called upon or authorized to pass upon it on the appeal of the land company, and that our judgment of affirmance rendered at that time did not deal with the judgment of the Dictrijt Court as between the defendant and the tax collector. That the theory, therefore, of the present appellant, that that judgment by the said affirmance became that of this court, and that therefore, we are authorized, under Art. 629 of the Code. ofjPractiee to supervise and *1787 control its execution and see that it be carried out accordingly is without a legal basis on which to rest.
It is not disputed that at the present time both the judgment on the main demand and that between defendant and the tax collector are beyond the power of control by appeal from the judgments themselves, whether they be considered as judgments of this court or of the District Court.
The property which gave rise to this controversy was held by the State with other properties under adjudications made to it in enforcement of delinquent taxes. By Act No. 82 of 1884 the tax collectors of the different parishes were directed to sell these properties under the provisions of that act. This particular property was sold on the 21st day of June, 1894, and adjudicated to John H. Griffith, to whom a deed was given on the 6th of August, 1894. The latter on the 16th day of August, 1894, sold the property to the Pontchartrain Land Company. On that company’s applying to the court to be placed in possession Mrs. Brown, claiming to be the owner of the property, and that the adjudication to the State and that by the State to Griffith had not divested herself and her authors of their title, enjoined the land company and the civil sheriff from further acting in the premises — attacked the adjudications as null and void and of no effect, and prayed that she be decreed the owner of the property. The Pontchartrain Land Company in answer to this attack asserted the validity of the adjudications and the legality of their title and called in warranty B. T. Walshe, the tax collector who had made the sale to ■Griffith, praying in the event of a judgment adverse to them that he be condemned to pay them forty-four dollars with interest and costs. The amount claimed was made up of thirty-six dollars, the price of the adjudication to Griffith, two dollars for tax researches, six dollars copy of deed and plan.
The suit terminated in a judgment of the District Court in favor of Mrs. Brown against the Pontchartrain Land Company, declaring the adjudications null, void and of no effect, and recognizing her as owner of the property, and “ in favor of the Pontchartrain Land Company against B. T. Walshe, State Tax Collector, ordering the said tax collector to refund to the Pontchartrain Land Company the sum of thirty-six dollars, the same being the amount of the purchase price.” The judgment further decreed that the Pontchartrain Land Company pay the costs of the proceedings.
*1788 The Land Company moved for and obtained in open court an appeal from the judgment to the Supreme Coürt. The Supreme Court on this appeal “ affirmed the judgment.”
In the return of the judgment of the Supreme Court to the District Court the Pontchartrain Land Company alleging that by judgment of the District Court, signed 16th March, 1895, it had ordered B. T. Walsh, State Tax Collector, to pay them thirty-six dollars, which the said B. T. Walshe refused to pay although demanded that costs follow judgment and clerk’s costs amount to—
Judgment.$36 00
44 00
Short-hand testimony. 6 00
Oosts Supreme Court.. 16 00
Sheriff’s costs. 6 00
Total.$108 00.
caused a rule to issue to B. T. Walshe, Tax Collector, to show cause why said costs should not be taxed and why he should not pay said amounts, or in default thereof be punished for contempt of court; a writ of distringas issue, a fieri facias issue, or such other orders be made.
After hearing the court made the rule absolute, ordering Blaney T. Walshe, Tax Collector, to pay to the Pontchartrain Land Company the sum of one hundred and eight dollars out of any funds in his hands, and that the said company have any writ or process authorized by law to enforce this order.
From the judgment on this rule the State Tax Collector appealed to the Supreme Court.
There is no doubt that when the Pontchartrain Land Company moved in open court for and obtained an appeal from the judgment of the District Court setting aside the sale by virtue of which it was claimed that the title of Mrs. Brown arid her § authors had been divested from them and had become vested in that company, that the effect of the same was to make the warrantor whom she had called into the case a party to the appeal. The warrantor was made a party in the District Court only through the call in warranty, and we think that the proceedings in warranty ¡¡necessarily formed part of the case when it went to the appellate court. The plaintiff was authorized on appeal to ask for an amendment of the judgment in any respect in which she conceived herself aggrieved and defendants were entitled to have made corresponding change in the judgment of the lower court as between themselves’and the warrantor should *1789 the amendment asked be granted and injuriously affect them in their relations with their warrantor.
The relations of the parties were so interdependent and connected — the rights and obligations of the one so much affected by the rights of the others as not to be easily separated. There are not involved in this litigation separate and independent titles held on the one hand by Mrs. Brown and on the other by the defendant, the State. The issue was simply whether a certain title held by the authors of Mrs. Brown, and which she presently set up as being in herself, was legally divested by certain tax proceedings directed against them and said property by the State, and had thereby vested in the Pontchartrain Land Company. In the attack made by the plaintiff against those proceedings and the sale thereunder, the property was declared to be over two thousand dollars in value, and the main suit fell legally within the appellate jurisdiction of this court. The call in warranty invoked by the defendant involved substantially, though not in express terms, a contingent demand as against the warrantor for the annulment of the title, which the latter had conveyed to them of the same property coupled with certain resulting personal demands against their vendor. The main demand with the call in warranty was an entirety, the latter being a mere incident of the former.
This court acted on that theory in Walshe vs. Harang, 48 An. 984, considering that the situation of parties was such as to call for a simultaneous general adjustment of their respective rights and obligations.
Appellees appear themselves to have been of that opinion, as in the rule taken after the appeal on the tax collector that officer was sought to be made liable through that judgment proprio vigore for the costs of that appeal.
Viewing the judgment on the call in warranty as having come to this court with the main demand, the proceedings taken in the Dis - triet Court in its execution fall under our supervision under Art. 629 C. P. independently of the amount involved in the particular matter of which complaint is made.
The complaint comes before us in the form of an “appeal,” but the proceeding is not in reality such, but one supervisory in character as matter connected with our appellate jurisdiction in order to aid and make it effectual. [State vs. Judge, 19 La. 180, 181.] The *1790 matter we think would have been more appropriately brought before us through certiorari and a qaasi-prohibition and under a return and answer of the District Judge than as it has been; but we see no particular objection as to the form of the proceeding, if the rules which the court would have followed had the form been different from what it is, be followed.
The motion to dismiss is overruled.
Having prefaced this much, we now direct our attention to the rule taken in the District Court on the tax collector in attempted enforcement of the judgment in warranty. The rule shows on its face that the mover was aware that the judgment was not enforceable by writ of fieri facias on funds of the State in the hands of the tax collector.
The judgment on the warranty call was not a money judgment for debt in any sense of the word. In the fourth section of Act No. 82 of 1884, under the provisions of which act the adjudication to Griffith was made, it was enacted that “in case the State shall fail to give to the purchaser an absolute title to the property sold, or if said property shall be declared null and void for any cause, the amount paid by the purchaser to the State for such property shall be refunded by the tax collectors to the purchaser.” The judgment in question is nothing more than a repetition of this mandate to the tax collector made in a proceeding to which he was a party. It threw no obligation upon the tax collector other than that which the law itself threw upon him. What was that obligation? Was it to pay costs in the proceeding to which he was so made a party? The District Oourt originally was of the opinion that it was not, and in that opinion it was correct, and we were not called on appeal to correct its judgment. It was only upon the return of the cause to the District Oourt that the views of that court changed. The State does not pay costs, and there is nothing in the provisions of the law in question which indicates any intention to make a change in that respect in favor of tax purchasers. The Pontchartrain Land Company asserts that the lawmaker declares in express terms that the tax collector should, upon the annulment of the tax title, refund to the purchaser the amount paid by the purchaser to the State. So it does, and so did also the original judgment of the District Oourt which was affirmed, but that judgment did not declare when, how nor under what circumstances this *1791 refunding was to take place. To ascertain these facts the judgment would have to be construed by the law itself. When so construed it is clear that neither this court nor the court below would be authorized to direct the tax collector to pay out the moneys of the State in manner as he had been directed by the District Court to pay them out. In the first place there is nothing in the law which would justify tax collectors in retaining State moneys in their hands-to contingently meet possible demands for the refunding of the price of annulled tax sales.- The law has fixed the time at which moneys in the hands of tax collectors have to be turned into the treasury, and it is the duty of those officers to comply with the law in that respect. Counsel of the land company say that the construction placed by this court on this subject as expressed would, if adhered to, practically make a dead letter of the law, inasmuch as all funds-would necessarily have to be paid into the treasury before a final judgment could be obtained as to the validity of a title.
We understand counsel’s contention to be that if the tax collector has-(in spite of what he claims was his duty) paid over the particular moneys which he received on account of these annulled sales into the treasury, he is authorized and directed by the law to refund to the purchasers the price thereof out of any moneys whatever which he might thereafter have in his hands. We think there is no warrant for this position. .Act No. 82 of 1884, in which this provision for refunding is found, is a public act, it is true, but it is not a general act covering all tax sales made in the State. It has refer- . enee to the tax sales to be made under the provisions of that particular act of the properties found in the precise situation which that-law refers to. All its sections point to the funds out of which expenses, costs, commissions, etc., are to be met as those which will pass into the hands of the tax collector as arising from the sale of that particular class of property.
We are of the opinion that the tax collector would be only justified in refunding to the purchaser the price which he had paid in the event that he should have at the time of the demand upon him for a-refunding of the price, based on the judgment of annulment of title,, funds in his hands arising out of the sales of lands made under the-provisions of Act No. 82 of 1884. It is not alleged in the rule taken upon the tax collector that a demand had been made upon him for payment out of funds arising from that source then in his hands, *1792 and that he had refused to make payment, or that he had any such funds in his hands. The theory of the mover, concurred in by the District Court, was and is that under the judgment in warranty the tax collector could be made to refund the price which the purchaser had paid, with costs, out of any moneys whatever which the collector might have in his hands. In this the court erred.
Eor the reasons assigned, it is ordered, adjudged and decreed that the judgment or decree of the District Court herein appealed from, upon the rule taken upon the tax collector, be and the same is hereby annulled and set aside, and the rule discharged without prejudice to further proceedings to be legally taken for refunding of the price paid by the Pontchartrain Land Company for the property adjudicated by the State to John H. Griffith, on the 21st of June, 1894, out of funds in the hands of the tax collector legally applicable to the refunding of such price. Costs of both courts to be paid by the Pontchartrain Land Company. Our original decree remains unchanged except in so far as herein modified.